IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ERIC L. JACKSON                                              PLAINTIFF

v.                                              CAUSE NO. 3:13CV581-LG-JCG

BANK OF AMERICA, N.A.; RECONTRUST
COMPANY, N.A.; BANK OF NEW YORK MELLON f/k/a
THE BANK OF NEW YORK AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWMBS 2004-R1;
JOHN and JANE DOE 1; and JOHN
and JANE DOES 2-100                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER GRANTING
PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [76] for Summary Judgment filed by

defendants the Bank of America, N.A., Bank of New York Mellon, and Recontrust

Company, N.A. (the "Banks").  The Banks move for dismissal of plaintiff Eric L.

Jackson's claims related to the foreclosure sale of his home in Jackson, Mississippi.

Jackson contends the foreclosure was wrongful because he had filed a bankruptcy

petition earlier that day, and because the Banks did not comply with certain terms

of the Deed of Trust.

The issues have been fully briefed.  After due consideration of the parties'

submissions, it is the Court's opinion that the Banks have shown they are entitled

to summary judgment in regard to Jackson's wrongful foreclosure claims.  Jackson

has waived the claims by failing to contest the foreclosure sale for three years.

Additionally, the statute of limitations has run on certain of the breach of contract

claims, and even if it has not, Mississippi law prohibits Jackson from bringing

breach of contract claims against the Banks.  Additionally, there is no question of material fact regarding Jackson's claim of violation of the implied covenant of good faith and fair dealing.  However, the remaining claims against the Banks of negligent infliction of emotional distress and conversion must proceed, because the Banks did not address them in their Motion.

DISCUSSION

**Facts and Procedural History**

Plaintiff Eric L. Jackson filed this action in Hinds County, Mississippi Circuit Court, and it was removed to this Court.  Jackson's Complaint states claims against the holder, servicer, and trustee[1] of the Deed of Trust secured by Jackson's property (the "Banks"), and also the John and Jane Doe current occupiers of the property. Jackson alleges he purchased the property on July 2, 2003.  He describes a series of transfers of the Deed of Trust between the Banks until April 15, 2010, when two events occurred: 1) Jackson filed a petition for reorganization under Chapter 13 of the Bankruptcy Code; and 2) ReconTrust sold the property at a foreclosure sale to Bank of New York Mellon.

Alleging that the Banks violated certain terms of the Deed of Trust and the automatic bankruptcy stay in foreclosing, Jackson brings the following claims against the Banks: 1) breach of contract; 2) breach of the duty of good faith and fair dealing; 3) negligence; 4) wrongful/fraudulent foreclosure; 5) negligent infliction of

_____

[1] Bank of America, N.A., ReconTrust Co., N.A., and Bank of New York Mellon.

emotional distress; 6) conversion; 7) fraudulent conveyance; and 8) unjust enrichment.[2]

Jackson began having trouble meeting his mortgage obligation in 2004.  He sought and received four loan modifications - in September 2004, June 2005, April 2006, and December 2007.  (Def. Ex. D 4-7, ECF No. 76-4).  Jackson agrees that he defaulted on his mortgage loan in 2009.  (Def. Ex. D 62, ECF No. 76-4).  Bank of America sent Jackson a Notice of Intent to Accelerate dated July 6, 2009 informing him that payment of $3,578.08 was required in order to reinstate his loan.  (Def. Ex. D 9, ECF No. 76-4).  Jackson remitted $3,539.34 on August 25, 2009, which Bank of America credited to Jackson's account for payments due in May, June and July of 2009.  (Pl. Ex. A, ECF No. 102-1).  That was the last payment Jackson made toward his mortgage loan.  (Def. Ex. D 64, ECF No. 76-4).  He recalls a phone conversation with Bank of America at an unspecified later time, when he was informed that he could not make a partial payment, but was required to remit the entire amount due in order to bring his account current.  (*Id*. at 69).

Bank of America sent another Notice of Intent to Accelerate to Jackson on October 6, 2009, although he has no knowledge of receiving it.  (Def. Ex. C 3, ECF No. 76-3; Def. Reb. Ex. A 79, ECF No. 108-1).  Near the end of March 2010, Jackson learned from a family member that his house was to be sold at a foreclosure sale on April 15, 2010.  (Def. Reb. Ex. A 81, ECF No. 108-1).

---

[2]  Jackson also brings two claims against John and Jane Doe: 1) trespass; and 2) ejectment.

Jackson testified that he did not have the money to save his house from foreclosure. (Def. Reb. Ex. A 81-82, ECF No. 108-1). His attorney therefore filed a bankruptcy petition "in the early morning hours of April 15, 2010," but Bank of America's agent, ReconTrust, went ahead with the sale scheduled for later that same day. (Pl. Mem. 2, ECF No. 102). Jackson called Bank of America a few days later and learned that his home had been sold.

Jackson continued to live in the home for about two years after the sale. Bank of America monitored the condition of the home and its occupancy status. (Pl. Ex. E, ECF No. 102-5). The home was occupied on most of the visits, until June 2012. After June 2012, the home was found to be vacant on each of the four subsequent monthly visits. (*Id.*). Beginning in July 2012, the power was not in use. By September 2012, Bank of America determined the property was vacant; one door had been left unlocked and the house was in disrepair. The house was secured and repairs begun. (*Id.*). Jackson testified that sometime in 2012, the Bank "took everything out of the home," which is the basis of his conversion claim. (Def. Ex. D 106, ECF No. 76-4).

Jackson alleges that the Banks violated two HUD regulations incorporated into Paragraph 9 of the Deed of Trust when it 1) failed to notify him in a format prescribed by HUD that he was in default and that it intended to foreclose unless he cured the default; and 2) failed to have a face-to-face interview with him, or make a reasonable effort to arrange a meeting, before three monthly installments due on the mortgage were unpaid. Jackson also brings claims based on the Banks'

violation of the automatic bankruptcy stay.

The Banks move for summary judgment in regard to the wrongful foreclosure-related claims against them, which are those labeled breach of contract, breach of the covenant of good faith and fair dealing, negligence, wrongful foreclosure, and fraudulent conveyance.  The Banks' Motion does not address Jackson's claims for negligent infliction of emotional distress or conversion.  The Court analyzes the Motion under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).

**Statute of Limitations**

The Banks argue that all of Jackson's claims are subject to Mississippi's three year statute of limitations, Miss. Code § 15-1-49, and as they were filed more than three years from the time the foreclosure sale was first publicly noticed, the claims are time-barred.  Jackson argues that his HUD regulation claims concern conditions precedent to the foreclosure, and any claim based upon violation of the regulations could not accrue until the foreclosure had taken place.

The Mississippi Supreme Court has held that the general, three-year statute of limitations applies to actions for wrongful or fraudulent foreclosures, and it accrues on the day of the disputed foreclosure.  *Tenn. Props., Inc. v. Gillentine*, 66 So. 3d 695, 698 (Miss. Ct. App. 2011); *Commercial Servs. of Perry, Inc. v. Fed.*

*Deposit Ins. Corp.*, 199 F.3d 778, 780 (5th Cir. 2000). Jackson's Complaint was filed exactly three years from the date of the foreclosure sale. Accordingly, any claims generally arising from the alleged wrongful foreclosure are timely.

However, the breach of contract claims tied to alleged violation of HUD regulations did not accrue on the date of foreclosure. They accrued earlier. The Banks were required by the first regulation to have a face-to-face interview with the mortgagor "before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.64(b). Regardless of whether the Banks ever conducted a foreclosure sale, the contract was breached and Jackson's injury occurred when he missed three monthly payments without an interview being scheduled.

The second regulation required notification of foreclosure "prior to initiating any action required by law to foreclose the mortgage." 24 C.F.R. § 203.606(a). The Banks state that the initiating action required by Mississippi law was the first publication date of March 25, 2010. Thus, the contract was breached and Jackson's injury occurred on March 25, 2010, when the Banks took the first action toward foreclosing without notifying him first. As any violation of the regulations was complete before the foreclosure sale and more than three years prior to the filing of this action, Jackson's breach of contract claims based upon violation of the regulations are untimely. *See Wallace v. Greenville Pub. Sch. Dist.*, 142 So. 3d 1104, 1107 (Miss. Ct. App. 2014).

**Viability of the Untimely Contract Claims**

In the alternative. If Jackson's claims asserting breach of the HUD

regulations contained in the Deed of Trust were timely, Mississippi law would

prohibit Jackson from bringing them.

Sections 9(a) and (d) of the Deed of Trust provide:

9.  Grounds for Acceleration of Debt.

(a) Default.  Lender may, except as limited by regulations issued by
the Secretary, in the case of payment defaults, require immediate
payment in full of all sums secured by this Security Instrument if:

>   (i) Borrower defaults by failing to pay in full any monthly
>   payment required by this Security Instrument prior to or
>   on the due date of the next monthly payment, or

>   (ii) Borrower defaults by failing, for a period of thirty
>   days, to perform any other obligations contained in this
>   Security Instrument.

. . .

(d) Regulations of HUD Secretary.  In many circumstances regulations
issued by the Secretary will limit Lender's rights, in the case of
payment defaults, to require immediate payment in full and foreclose
if not paid.  This Security Instrument does not authorize acceleration
or foreclosure if not permitted by regulations of the Secretary.

(Def. Ex. B 4-5, ECF No. 76-2).

Jackson contends that the Banks violated the two regulations of the

Secretary noted above contained in 24 C.F.R. §§ 203.604(b) and 203.606(a).  As

stated, those provisions require that before initiating foreclosure proceedings, the

lender must notify the mortgagor of his default and that the mortgagor intends to

foreclose, and attempt to have a face-to-face meeting with the mortgagor before the

mortgagor misses three monthly payments.[3]

Jackson argues that he did not receive the October 6, 2009 Notice of Intent to Accelerate - his last notice before the foreclosure sale - nor did Bank of America attempt to schedule a face-to-face meeting with him, and therefore the Banks breached the Deed of Trust. Jackson is careful to specify that he is not claiming that the Banks' purported violation of these regulations gives rise to a cause of action; he is instead claiming that the regulations were incorporated into the Deed of Trust, and therefore violation of the regulations gives rise to a breach of contract claim.

---

[3] Section 203.604(b) states:

The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced. . . .

Section 203.606(a) states:

(a) Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met. The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account. In addition, prior to initiating any action required by law to foreclose the mortgage, the mortgagee shall notify the mortgagor in a format prescribed by the Secretary that the mortgagor is in default and the mortgagee intends to foreclose unless the mortgagor cures the default.

The Banks first argue that the majority view of these types of claims is that there is no affirmative cause of action for damages based on alleged violations of HUD regulations incorporated into a deed of trust.  *See, e.g., Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291947 (D. Colo. Sept. 18, 2013).

The Fifth Circuit Court of Appeals has held differently, that when the HUD regulations are explicitly incorporated into the loan agreement, "the documents and regulations constitute an integrated contract."  *Hernandez v. Home Savings Assoc. of Dallas*, 606 F.2d 596, 601 (5th Cir. 1979).  Violation of the HUD regulations may sustain a breach of contract claim in that instance.  *Id. See also Johnson v. JP Morgan Chase Bank*, 570 F. App'x 404, 405-06 (5th Cir. 2014); *Baker v. Countrywide Home Loans, Inc.*, No. 3:08cv916-B, 2009 WL 1810336, at *5 (N.D. Tex. June 24, 2009); *Donlon v. Evolve Bank & Trust*, No. JFM-12-2384, 2014 WL 1330522, at *5 (W.D. Tenn. Mar. 31, 2014).

Even though the express incorporation of the HUD regulations in Jackson's Deed of Trust may give him a legal basis for a breach of contract claim, the claim is nevertheless invalid for the second reason advanced by the Banks - Jackson's admitted default meant that he breached the Deed of Trust first, and therefore he cannot bring a breach of contract claim against the Banks.

The elements of a breach of contract claim in Mississippi are 1) the existence of a valid and binding contract, 2) that has been broken or breached by the

defendant.  *Business Commc'ns., Inc. v. Banks.*, 90 So. 3d 1221, 1224-25 (Miss. 2012).

> As a general rule, a party to a contract may break it by renouncing his liabilities under it; by rendering performance impossible; or by totally or partially failing to perform his agreement or undertaking.  When either party to a contract fails to perform any of his terms, the contract has been broken.  Moreover, if the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract, such a breach will discharge the other party from the performance of his promise.

*Matheney v. McClain*, 161 So. 2d 516, 519-20 (Miss. 1964) (citations omitted).  "[A] party who has breached a contract may not himself maintain a suit for breach of the contract against the other party."  *Snow Lake Shores Prop. Owners Corp. v. Smith*, 610 So. 2d 357, 361-62 (Miss. 1992) (citing *Brent v. Corbin*, 173 So.2d 430, 433 (1965) ("A party to a contract who is himself in default cannot maintain a suit for its breach.")).

There is no question here that Jackson breached the terms of the Deed of Trust by failing to make payments as required.[4]  Any breach by the Banks in foreclosing occurred after Jackson's initial breach.  Given this undisputed set of facts, Mississippi law does not allow Jackson to bring claims for breach of the Deed of Trust against the Banks.  *See Baker*, 2009 WL 1810336, at *5 (question of material fact regarding who had breached first foreclosed summary judgment).

---

[4]  Jackson was in default as soon as he "fail[ed] to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment."  (Pl. Ex. B 4 (¶9(a)(i)), ECF No. 102-2).

**Waiver**

The Banks contend that Jackson's causes of action related to their alleged violation of the automatic bankruptcy stay have been waived, because Jackson did not assert his rights in the bankruptcy court or in any other venue. As the Banks note, debtors have a private right of action for violation of the automatic stay pursuant to 11 U.S.C. § 362(k). *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 543 (5th Cir. 2009). Jackson testified that he knew a few weeks beforehand that his home was scheduled to be sold, and he learned it actually had been sold as scheduled when he spoke to someone at Bank of America "just days" after the foreclosure sale. (Def. Ex. D 99, ECF No. 76-4). But instead of protesting the foreclosure in the bankruptcy court, Jackson apparently did nothing. His bankruptcy case was dismissed about a month after the foreclosure sale for failure to file schedules and statements. (Def. Ex. F 2, ECF No. 76-6).

It is the Court's view that Jackson may have waived any claim he had under 11 U.S.C. § 362(k) by failing to pursue it in the bankruptcy court, but he has not made that claim here. He instead is claiming that the Banks were negligent or wrongful in conducting the foreclosure sale, because, inter alia, they had a duty to observe the Bankruptcy Code's imposition of an automatic stay.

As to this aspect of its waiver argument, the Banks point out that the law in Mississippi is that a mortgagor who has actual notice of a foreclosure sale and fails to object to the sale is estopped from subsequently challenging the title of the purchaser. In *Chambers v. BancorpSouth Bank*, 822 So. 2d 1113 (Miss. Ct. App.

2002), the court approved dismissal of a mortgagor's lawsuit to void a foreclosure sale of his property, because "there is no indication that the [mortgagor] made any objection to the foreclosure sale until several years after the sale had taken place." *Id.* at 1115.  Relying on *Chambers*, the Mississippi Court of Appeals also found that a mortgagor had waived any irregularity in a foreclosure sale because he

> was fully aware that the foreclosure sale was to take place. . . .  It is also clear that he had the opportunity to make objection to the sale, both as to the timing and manner and to the proposed payoff of the debt. [The mortgagor] admits that he had a representative present at the foreclosure sale and bidding.  Under case law, by his silence, [the mortgagor] waived any irregularity in the sale and is estopped from seeking to have the foreclosure sale set aside.

*Nichols v. Bush*, 913 So. 2d 387, 391 (Miss. Ct. App. 2005).

The circumstances of this case are similar to those in *Chambers*.  Jackson knew that the foreclosure sale was to take place and filed a bankruptcy petition to prevent it.  When the Banks failed to observe the bankruptcy stay, Jackson did nothing to bring their actions to the attention of the bankruptcy court.  He did not object to the foreclosure sale in any way until he filed this lawsuit exactly three years after the sale.  Mississippi law forecloses Jackson's ability to bring claims based on irregularities in the foreclosure sale at this late date.  Accordingly, Jackson's claims for breach of contract, negligence, unjust enrichment, and fraudulent conveyance will be dismissed, because each of these claims seeks to have the sale voided or set aside for  irregularities in the foreclosure sale.

**Breach of Implied Duty of Good Faith and Fair Dealing**

In Mississippi, every contract contains an implied covenant of good faith and

fair dealing, but in the case of a mortgage contract, the duty "entails a significantly lower standard of care than that owed in the fiduciary context." *Merchants & Planters Bank of Raymond v. Williamson*, 691 So. 2d 398, 404-05 (Miss. 1997). The parties are not prevented from "protecting their respective economic interests" or from asserting their rights in the event of a default. *Id.* at 405. "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992). "Bad faith, in turn, requires a showing of more than bad judgment or negligence; rather, 'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *Lippincott v. Miss. Bureau of Narcotics*, 856 So. 2d 465, 468 (Miss. Ct. App. 2003) (quoting *Bailey v. Bailey*, 724 So. 2d 335, 338 (Miss. 1998)).

Jackson alleges that the Banks breached their duty of good faith and fair dealing by improperly and illegally foreclosing on his property after he had filed for Chapter 13 bankruptcy protection.[5]  (Compl. 8 (¶40), ECF No. 1-1).  He argues that the evidence produced by the Banks shows that they do not check for bankruptcy filings before authorizing or conducting a foreclosure sale.  Also, Jackson testified that he heard from his bankruptcy counsel that the Banks were informed of his bankruptcy petition prior to the foreclosure sale.

---

[5]  These claims are timely because the allegations involve actions or omissions occurring on the date of the foreclosure sale.  The Banks could not have known of a bankruptcy filing until it was made on the same day as the foreclosure sale.

Jackson's evidence does not show a question of material fact for the jury regarding bad faith.  Jackson's testimony about what his counsel told him is not competent summary judgment evidence.  And at most, Jackson's allegations and evidence regarding the Banks' pre-foreclosure actions show negligence, not conscious wrongdoing, on the part of the Banks.  Furthermore, as Jackson notes, the Banks later rescinded the foreclosure sale for the reason that they were unaware of Jackson's bankruptcy filing at the time of the sale.[6]  The Banks are entitled to summary judgment in regard to this claim.

CONCLUSION

The Banks have shown that they are entitled to judgment as a matter of law in regard to Jackson's claims of breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful foreclosure, negligence, unjust enrichment, and fraudulent conveyance. Their Motion for Summary Judgment will be granted. This Order does not affect the claims made by Jackson that were not addressed in the Banks' Motion - negligent infliction of emotional distress and conversion.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [76] for Summary Judgment filed by defendants the Bank of America, N.A., Bank of New York Mellon, and Recontrust Company, N.A., is **GRANTED.**  Plaintiff's claims of breach of contract, breach of the implied covenant of good faith and fair dealing,

---

[6]  The Affidavit to Set Aside, Rescind and Void Substitute Trustee's Sale; Reinstate Deed of Trust; and Reconfirm Title was filed on July 8, 2013.  (Pl. Ex. C 3, ECF No. 102-3).

-14-

wrongful foreclosure, negligence, unjust enrichment, and fraudulent conveyance are

**DISMISSED**.

      **SO ORDERED AND ADJUDGED** this the 31st day of October, 2014.


            s/ *Louis Guirola, Jr.*
            LOUIS GUIROLA, JR.
            CHIEF U.S. DISTRICT JUDGE